[Civ. No. 8257. First Appellate District, Division Two.—May 31, 1932.]

BLANCHE BROWN, Respondent, v. W. F. BALL et al., Appellants.

Lawler & Degnan for Appellants.

Hugh H. Foster for Respondent.

DOOLING, J., *pro tem.*—This is an appeal by defendant, W. F. Ball, from a judgment against him based upon the stockholders' liability formerly provided for in section 322 of the Civil Code before its amendment in 1931. The plaintiff sued and recovered judgment as assignee of thirty-two separate creditors of Bartlett Music Company, a California corporation. The court found that at the time the indebtednesses sued upon were created appellant was the owner of 776 shares of the stock of such corporation out of 1720 then subscribed and gave judgment against appellant on that basis for $9,269.32.

Appellant attempted to set off against his stockholder's liability a claimed indebtedness by the corporation to himself of over $57,000. The trial court denied any set-off and appellant asserts error on that ground. Appellant cites many statements from text-writers on corporations and many cases from other jurisdictions in support of his contention that the set-off should have been allowed. Without examining these cases and statements in detail in this opinion it will suffice to quote the following from Fletcher's

Encyclopedia of Corporations, volume 7, page 7456, section 4246, as typical: "According to the weight of authority, when the statute imposes upon stockholders a several liability for corporate debts to the extent unpaid on their stock, or to a certain additional extent, and allows any creditor to sue any stockholder to recover a judgment to the extent of his liability the stockholder is entitled in equity to set off against his liability a *bona fide* debt due from the corporation, or to set up the debt as a defense, or defense *pro tanto,* in an action at law." It is to be noted that the author adds: "Some courts, however, have held that no right of set off exists even under such circumstances."

It is rather surprising that the question here involved apparently has never been squarely passed upon by the courts of this state. Our courts have, however, so repeatedly stated the nature of this statutory stockholders' liability that it will be sufficient in that connection to refer to two comparatively recent opinions of our Supreme Court (*Aronson & Co.* v. *Pearson,* 199 Cal. 286 [51 A. L. R. 1380, 249 Pac. 188], and *Ellsworth* v. *Bradford,* 186 Cal. 316 [199 Pac. 335].) Those cases review the previous decisions extensively and make clear the fact that the proportionate liability of a stockholder for the debts of a corporation under Civil Code, section 322, as it formerly read, is direct, primary and personal, contractual in its nature and entirely distinct from the debt of the corporation. The court said in *Ellsworth* v. *Bradford, supra,* at page 318: "The statutory liability, as has been repeatedly held by this court, is an independent original liability of the stockholder to the creditor which can be enforced directly against the stockholder, quite independently of any judgment against the corporation, and is not dependent upon an adjudication of indebtedness in an action against the corporation, but upon the actual existence of such indebtedness. Under the provisions of the California law stockholders are held to be primarily liable as principal debtors, and not as sureties or guarantors."

In *Aronson & Co.* v. *Pearson, supra,* at page 290, we find this language: "The constitutional and statutory provisions relating to the liability of stockholders become essential terms of the subscription agreement of a stockholder as fully as if they were set forth at length therein. By accepting

ownership of stock in a corporation, the stockholder in effect offers to make payment, to the extent of his stockholder's liability, to any person who may extend credit to the corporation during his period of ownership. Whenever, during such ownership, any person so extends credit to the corporation, 'the offer and act (of extending credit) combined make a complete contract' between the stockholder and the creditor. It thus appears that the stockholder's liability to the creditors of the corporation is not based upon the agency, in any general sense, of the corporation to impose such liability upon him but upon his own agreement, implied from his acceptance of the ownership of stock.'' And again the court says, at page 291: ''Under the California law the liability is as distinct and separate as it would be if the act had made no provision for any other liability than that of the stockholder for the debts of the corporation, the direct relation of debtor and creditor being established between the stockholder and the creditor by the statute.''

With these principles in mind we can see no possible ground for allowing a stockholder to set off against this liability an indebtedness due to him from the corporation. The stockholder's liability to the creditor of the corporation is a personal, direct, primary and contractual obligation, just as much as if he had entered into a contract in writing directly with the creditor to pay a proportionate part of the corporation's debt to him. There is no privity between the creditor and the corporation in respect to the stockholder's obligation to pay the creditor which could justify the stockholder in offsetting a debt by the corporation to him against his stockholder's liability. This is exactly the conclusion which the appellate division of the Supreme Court of New York reached in the case of *Pacific G. & F. Co.* v. *Opolinsky,* 135 Misc. Rep. 265 [237 N. Y. Supp. 682]. In that case an action was brought in New York to enforce the liability of a stockholder in a California corporation and there, as here, the stockholder attempted to set off a debt due from the corporation to himself. In holding that such a set-off was not proper under the California law the New York court said, at page 686: ''The liability created by the California statute is a primary one, and the stockholder is liable to the same extent as if he had personally entered into the contract. In such a case the stockholder would have no more

right to offset the debt of the corporation than would a partner, if sued, have the right to offset the debt of a co-partner, or a guarantor to set up a claim against the principal.'' In this decision, too, will be found a clear statement of the distinction between the cases from other jurisdictions relied upon by appellant and the case of a direct and primary liability such as was created by Civil Code, section 322, before its recent amendment.

The Supreme Court of Washington in *McCann Co.* v. *Week,* 139 Wash. 183 [246 Pac. 292], and 141 Wash. 702 [251 Pac. 858], took the opposite view, but both to the opinion of the court in department and in bank vigorous dissenting opinions were filed which in our judgment correctly state the law.

We are satisfied that the trial court acted correctly in refusing to allow the set-off claimed.

One of the claims sued upon, and upon which judgment was allowed, was based upon a promissory note given by the corporation to the Whittier National Bank. As to this appellant claims that it is barred by the statute of limitations. (Code Civ. Proc., sec. 359.) The note sued upon was executed less than three years before the action was commenced but it appears clearly from the evidence that it was in fact a renewal note given to evidence an existing and unpaid indebtedness created more than three years before action filed. While the witness Demarask, who was the officer from the bank called to lay the foundation for the introduction of the note, expressed it as his opinion that the note sued upon was not a renewal note, he also testified repeatedly that at the time the note sued upon was executed the Bartlett Music Company received no cash or property of any sort from the bank but a previous note was canceled and surrendered and the note sued upon given in its place. The stockholders' liability was created when the money was originally borrowed and the statute of limitations began to run then. The execution of the renewal note did not create a new stockholders' liability nor toll the running of the statute on the stockholders' liability originally created and this particular obligation was accordingly barred as to appellant. (*Hyman* v. *Colman,* 82 Cal. 650 [16 Am. St. Rep. 178, 23 Pac. 62]; *Bank of San Luis Obispo* v. *Pacific Coast Steamship Co.,* 103 Cal. 594 [37 Pac. 499]; *Goodall* v. *Jack,*

127 Cal. 258 [59 Pac. 575]; *National City Bank* v. *Chubb,* 52 Cal. App. 655 [199 Pac. 537]; *Martin* v. *Howe,* 190 Cal. 187 [211 Pac. 453]; *Fry* v. *Baltimore Hotel Co.,* 80 Cal. App. 415 [252 Pac. 752].)

■ Appellant complains of the admission into evidence in this action of the account books of Bartlett Music Company. In this behalf appellant claims that the account books of the corporation could not be introduced in evidence against the stockholders. It was so held in *Neilson* v. *Crawford,* 52 Cal. 248. The holding in *Neilson* v. *Crawford* was at least seriously questioned in *McGowan* v. *McDonald,* 111 Cal. 57 [52 Am. St. Rep. 149, 43 Pac. 418], and *San Pedro Lumber Co.* v. *Reynolds,* 121 Cal. 74 [53 Pac. 410]. We need not stop to discuss these three cases or the possible distinctions which might be made between them for the reason that in our judgment the reasoning of the Supreme Court in *Ellsworth* v. *Bradford, supra,* logically compels us to hold that the books of a corporation, if admissible against the corporation, are admissible likewise against the stockholder as *prima facie* evidence of the stockholder's liability. In *Ellsworth* v. *Bradford,* in holding that a judgment against the corporation is *prima facie* evidence in a suit against the stockholder, the court said (186 Cal., at page 325) after discussing other grounds for allowing the judgment against the corporation to be introduced: "This reasoning may be supplemented by the provision of section 1851 of the Code of Civil Procedure that 'Where the question in dispute between the parties is the obligation or duty of a third person, whatever would be evidence for or against such person is *prima facie* evidence between the parties.' This section of the code apparently both avoids the objection to using the judgment at all as evidence in a suit against the stockholder and limits its conclusiveness.

"It cannot be doubted that in an action on the stockholder's statutory liability the 'obligation of a third person', the corporation, is in issue, and by virtue of this provision the judgment against the corporation on such obligation becomes *prima facie* evidence."

By a parity of reasoning in such an action the books of the corporation, if admissible in a suit against it, are admissible as *prima facie* evidence against the stockholder.

However, it is fundamental that account books to be admissible must be kept in the regular course of business (10 Cal. Jur., p. 907). It was shown that the books of the Bartlett Music Company had been turned over to a committee of creditors and by them "brought up to date". As to those items that were not shown to have been entered in the books while they were under the control of the corporation we are satisfied that the books were improperly admitted.

There was turned over to the committee of creditors by the officers of the corporation an audit and financial statement of the affairs of the corporation made under their direction by a firm of public accountants, Haskins & Sells. This was admitted in evidence over the objection of appellant and we think properly so. Having been prepared under the direction of Bartlett Music Company and by it delivered to the committee of creditors as a statement of its accounts it would have been admissible against the corporation as an admission and hence was *prima facie* evidence against the stockholders. (*Ellsworth* v. *Bradford, supra;* Code Civ. Proc. 1851.)

Complaint is made of the admission into evidence of many of the assignments upon several grounds. As to some it is urged that they referred to accounts attached and no accounts were in fact attached to them. We think that it clearly enough appears that the assignors intended to assign their claims against the Bartlett Music Company and its stockholders and the failure to attach the accounts was, at most, a mere irregularity which did not affect the validity of the assignments. As to others the claim is made that the proof of due execution of, and authority to make, the assignments was not sufficient to lay a proper foundation. We have examined the evidence in each of these cases and are satisfied that a sufficient foundation was in fact laid except in a few cases where the only foundation laid for the introduction of the assignments was the proof that they had been mailed to the assignors with a request to sign and return them and had been received back through the mail with signatures affixed. It is claimed by respondent that this was sufficient to raise a presumption of their due execution and the authority of the person purporting to have executed them. No authority directly in point is cited and we think that it would be a dangerous innovation to hold that on

such proof, without more, an assignment purporting to be .executed by an agent, as each of these were, could be introduced into evidence. ´ We are asked to presume not only that the persons whose names are subscribed actually executed the assignments, but also that they had authority to do so merely because they were received through the mail in their present form after having been mailed to the alleged assignors with a request that they be executed. We might possibly presume their due execution by the assignor himself upon such a showing, but the execution of assignments is not in the regular and ordinary course of business and there occurs to us no logical basis upon which we could indulge the presumption that the pretended agents in executing the assignments were acting within the scope of their authority. (*Rigby* v. *Lowe*, 125 Cal. 613 [58 Pac. 153].)

■ The witness Peterson testified over objection that he had examined the account books of the Bartlett Music Company and that the books showed that all the obligations in suit had been incurred within three years of the date of the commencement of the action. The books were all present in court and it is not claimed that any of the items added after the books were turned over to the committee of creditors related to any transaction going back as far as three years. A witness may properly testify to the result of his examination of writings ''when the original consists of numerous accounts or other documents, which cannot be examined in court without great loss of time, and the evidence sought from them is only the general result of the whole''. (Code Civ. Proc., sec. 1855; *Globe Mfg. Co.* v. *Harvey*, 185 Cal. 255 [196 Pac. 261].) We are satisfied that the evidence here in question falls well within this rule.

With these general principles disposed of we shall proceed to a consideration of the separate items involved. As to counts 6, 15, 16, 20 and 29, involving a total claim against the corporation of $376.15 and a proportionate liability against appellant of $169.28, there was no foundation laid for the introduction of the assignments except the proof that they had been mailed out and received back in due course of mail. We have held that this was not sufficient.

The witness Salyer, who was an officer of the corporation and familiar with its accounts, identified many ledger sheets as being in the same form as when turned over to the com-

mittee. He also testified that entries were regularly made in the purchase journal either the month the purchase was made or at the latest in the succeeding month when a statement was received, thus fixing these entries as having been made under the supervision of the company. In one way or the other, or both, the amounts due on the following numbered counts of the complaint were proved: 1, 2, 5, 7, 10, 11, 12, 14, 17, 18, 19, 23, 27, 28, 30 and 31.

The amounts due under counts 10, 11, 18, 19, 22, 24, 26, 27, 30 and 31 found complete or partial verification in the audit of Haskins & Sells above referred to.

As to counts 3 and 9 the assignors testified personally to the amounts owing. The amount in each case is under $15, and we need devote no more time to them. As to counts 4, 21 and 22 the amounts owing were proved by depositions taken on written interrogatories. In each case the witness was asked by interrogatory to state the balance due his corporation. ▮▮▮ When the depositions were being read into evidence objection was made that the question called for the conclusion of the witness. It was not shown that any objection was made to the form of the interrogatory at the time the interrogatories were settled. The objections came too late when made for the first time on the trial. (Code Civ. Proc., sec. 2025; *Kyle* v. *Craig*, 125 Cal. 107, 114, 115 [57 Pac. 791].)

The amount due under count 25 was testified to without objection by the witness Peterson. As to counts 24 and 26 it is claimed that witnesses were allowed to testify to the amount owing from an examination of the books of the assignors without producing the books in court. The amounts allowed were supported by the audit sheets prepared by Haskins & Sells, and while the amounts showed by this audit varied slightly from the amounts allowed the variance is so slight as to justify the application by us of the doctrine *de minimis*.

On count 13 the judgment against appellant amounted to $3.55. It is claimed that the court erred in allowing this amount to be proved by incompetent evidence. The amount involved is too trifling to take up the time of this court. On count 8 the total amount allowed against appellant was $31.68. About half of this amount was verified by the

witness Salyer from the books of the corporation. As to the balance we think that enough appears to support the finding.

Appellant complains that in many instances witnesses were allowed to testify to the amount due at the time of trial. Since the corporation was out of business long before the complaint was filed, and hence incurred no new obligations, we cannot see how appellant could have been injured by this.

■ As to counts 27 and 30 the judgment was for more than the amount alleged and prayed for. The amounts allowed are supported by the proof, but the complaint was not amended in this particular. Under these circumstances the amount allowed in excess of the allegations and prayer of the complaint must be eliminated. (*Meisner* v. *McIntosh,* 205 Cal. 11 [269 Pac. 612].)

This case, involving as it does, thirty-two separate claims with specifications of error of various sorts directed to each claim, has entailed a vast amount of labor. Manifestly if each specification were discussed in detail this opinion, which is already longer than the court would like, would be expanded to entirely unreasonable proportions. We have, however, examined the evidence in support of each count in the light of the contentions advanced by appellant and the result of our examination has been summarized herein.

The appellants E. J. Salyer and Roy L. Salyer have stipulated that their appeal may be heard on the brief filed by appellant Ball. What has been said herein applies with equal force to these appellants. For the various reasons given the judgment as to all appellants should be affirmed except as to such portions thereof as are based upon counts Nos. 6, 15, 16, 20, 27, 29, 30 and 32, as to which counts we have held the evidence insufficient, and as to which the judgment should be reversed and a new trial had. However, for the purpose of the record in the court below, a modified judgment covering the portions herein affirmed should be entered showing the proportionate liability of each of these appellants.

It is therefore ordered that the judgment is modified with directions to the trial court to enter a judgment in favor of respondent and against these appellants in accordance with the views herein expressed and to retry only the issues

arising under the counts specified in the preceding paragraph.

The appellants will recover their costs on this appeal.

Nourse, P. J., and Spence, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on June 28, 1932, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 28, 1932.